IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

FERNANDO HINE RENAULD and HEIDY RIVERA CAMPOS,

    Plaintiffs,

vs.

CITY & COUNTY OF DENVER, OFFICER MARK MOORE, OFFICER COLLEEN O'DELL, OFFICER JOHN McGRAIL, and HASSAN KIASS d/b/a ALL POINTS EXECUTIVE TRANSPORTATION,

    Defendants.

## COMPLAINT AND JURY DEMAND

For their complaint against Defendants, Plaintiffs Fernando Hine Renauld and Heidy Rivera Campos, state, allege and claim as follows:

### INTRODUCTION

1. This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution against Denver Police Department Officers Mark Moore, Colleen O'Dell and John McGrail in their individual capacities, the City and County of Denver, and Hassan Kiass, who acted in conjunction with the officers to deprive Plaintiff Fernando Hine of his constitutional rights. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

2.      On January 14, 2008, at approximately 3:45 p.m., Fernando Hine Renauld was subjected to an unreasonable seizure, violating his rights under the Fourth and Fourteenth Amendments of the United States Constitution.  These violations and torts were committed as a result of policies and customs of the City and County of Denver.

## PARTIES

3.      Plaintiff Fernando Hine Renauld is now, and at all relevant times has been, a citizen of Costa Rica and resident of San Jose, Costa Rica.

4.      Plaintiff Heidy Rivera Campos is Fernando Renauld's wife and is now, and at all relevant times has been, a citizen of Costa Rica and resident of San Jose, Costa Rica.

5.      Defendants Mark Moore (serial number 92037), Colleen O'Dell (serial number 06032), and John McGrail (serial number 06043) (collectively, "Defendant Officers") were at all relevant times police officers of the Denver Police Department acting under color of state law.

6.      Defendant Officers were at all relevant times acting as officers of the Denver Police Department and pursuant to ordinances, regulations, policies, customs and usages of the City and County of Denver.   They are sued in their individual capacities.

7.      The City and County of Denver, Colorado, is a municipal corporation, a political subdivision of the State of Colorado, and a Home Rule City and County authorized and created by Article XX of the Colorado Constitution.  The City and County of Denver has final authority and responsibility for the Denver Police Department and its employees, including the Defendant Officers.

8.	Defendant Hassan Kiass is a sole proprietor, d/b/a All Points Executive Transportation, who regularly transacts business in the State of Colorado, and whose business is believed to be located at 7575 E. Arkansas Ave, Bldg. 1, # 208, Denver, CO 80231.

9.	Defendant Hassan Kiass, at all relevant times, acted in conjunction with and obtained significant aid from the Defendant Officers in depriving Plaintiff Fernando Hine of his constitutional rights.

10.	At all relevant times herein, Defendants were "persons" for purposes of 42 USC § 1983, and acted under color of law to deprive Plaintiff of his Constitutional rights, as set forth more fully below.

## JURISDICTION AND VENUE

11.	This Court has subject matter jurisdiction over this action under 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1331; and 28 U.S.C. § 1343; and supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a).

12.	Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b), because it is where a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

13.	On January 14, 2008, Fernando Hine Renauld ("Fernando"), his wife Heidy Rivera Campos ("Heidy"), their son Kevin Hine Rivera ("Kevin"), their daughter Nicole Hine Rivera, and their son's friend Alejandro Obando Porras ("Alejandro"), were staying at The Brown Palace Hotel, located at 321 Seventeenth Street, Denver, after returning from vacationing

in Beaver Creek, Colorado, and prior to their scheduled return to San José, Costa Rica, on January 16, 2008.

14. Prior to traveling to Denver, Heidy arranged for limousine services on behalf of Fernando and herself through Hassan Kiass d/b/a All Points Executive Transportation ("Hassan") for transportation on January 5, 2008, from Denver International Airport ("DIA") to the Denver Marriott City Center, located at 1701 California Street; from the Denver Marriott to the Hotel Oxford in Beaver Creek, Colroado on January 6, 2008; return travel from Beaver Creek to the Denver Marriott on January 13, 2008; and finally from the Denver Marriott back to DIA on their original return flight date of January 14, 2008, all for an agreed fee of $2,456.

15. Despite having agreed to a fee of $2,456 for the transportation services, Hassan attempted to collect $2,750 – more than doubling that portion of the fee agreed to for the scheduled travel from DIA to the Marriott and from the Marriott to Beaver Creek – from the credit card information given to secure Hassan's services.

16. Fernando Hine Renauld was dissatisfied with Hassan's arbitrary increase in fees for services; therefore, he and his family returned to Denver from Beaver Creek on January 13, 2008 via another transportation company. They checked into The Brown Palace on the same day.

17. On the evening of January 13, 2008, Fernando spoke with Gonzalo Diaz ("Gonzalo"), the Spanish-speaking driver who provided the initial transportation services, to discuss the excessive fees and to coordinate a discussion with Hassan regarding Hassan's attempt to collect more than the agreed price.

18.     Rather than discuss with Fernando this purely civil dispute regarding fees for services, Hassan enlisted the Denver Police Department as a bill collector.

19.     On January 14, 2008, according to incident report number DPD-08-0029970, Hassan and the Denver Police Department characterized this dispute between Hassan and Fernando as "theft of services for limo fare costing 2,448 dollars." Fernando last utilized Hassan's services on January 6, 2008, to travel from Denver to Beaver Creek – over one week prior to the subject incident and report.

20.     On the morning of January 14, 2008, Fernando and his family went shopping at a local mall.  Upon returning to their rooms at The Brown Palace at approximately 3:30 p.m., they found that the keycards to their rooms had been deactivated.

21.     Heidy remained upstairs outside of the rooms along with their daughter and Alejandro, and Fernando proceeded to reception with his son Kevin, a fluent English-speaker, to help interpret.

22.     At the reception desk, Fernando explained that their keycards were not working and asked for new ones.  The receptionist, Michelle Cobb, asked for Fernando's identification and a different credit card than he originally provided to the hotel.  Ms. Cobb claimed that there was a problem with the original credit card.  Fernando complied and Ms. Cobb left the reception area with Fernando's identification and credit card and went into adjacent offices.

23.     Minutes later, the Defendant Officers approached Fernando and confronted him regarding the claimed debt to Hassan.  One of the officers asked Fernando if he was armed.

24. After responding that he was not armed, two of the officers grabbed Fernando by the arms and pulled him to the hall near the elevators while the third officer pushed Fernando from behind.

25. The officers detained Fernando outside the elevators for approximately thirty to forty-five minutes.

26. During that time, the officers accused Fernando of theft and threatened him with jail.

27. Fernando was not permitted to leave the area or even call his wife on her cell phone.

28. Fernando's son, in tears, attempted to interpret for the police officers who were making statements such as "in the U.S., debts need to be paid; if not, you have to pay with jail." Fernando's son told the police officers that his father had suffered a heart attack in March 2007, to which one of the officers responded "that was not [their] concern."

29. Fernando was finally permitted to call his wife, who then went to the lobby and found her husband detained by the officers near the elevators. The officers briefly discussed the debt with Heidy.

30. Fernando asked to speak to Hassan, but one of the officers responded by telling Fernando "you're not going anywhere."

31. Two of the officers then escorted Heidy to speak with Hassan. The third officer remained with Fernando and Kevin, requiring Fernando to go to the northwest corner of the hotel lobby. Fernando was not allowed to leave the area and at one point was ordered to "sit down" when he attempted to look out the window to where his wife was speaking with Hassan.

32. During Heidy's conversation with Hassan, Heidy explained that, at their insistence, Gonzalo had contacted Hassan regarding the disputed fees.

33. Ultimately, Heidy was allowed to call Gonzalo from her cell phone, who confirmed to one of the officers that Fernando had indeed been discussing the disputed fees with Gonzalo and had stated he would pay, but that Fernando wanted to discuss the excessive amount Hassan now claimed was due.

34. Even after Gonzalo confirmed Heidy's version of events, one of the officers nevertheless directed Heidy to pay Hassan $2,448 with Fernando's credit cards, which she did.

35. One of the officers told Heidy that she could later go to court to recover the money paid to Hassan.

36. After payment of the disputed fees, the police released Fernando.

37. At no time during the events described above, was Fernando intoxicated, incapacitated, a threat to the safety of himself or others, or disorderly. He had not committed any criminal offenses.

38. The Defendant Officers lacked probable cause to believe that Fernando Hine Renauld was involved in criminal activity warranting his detention, had no warrant for Fernando's arrest, no probable cause for Fernando's arrest and no legal cause or excuse to seize his person.

39. At all times during the described events, the Defendant Officers were engaged in a joint venture with each other and Hassan. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.

40. As a direct and proximate result of the intentional, reckless, deliberately indifferent and willful and wanton actions detailed above, Fernando suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person;

    b. Loss of his physical liberty;

    c. Physical pain and suffering and emotional trauma and suffering; and

    d. Economic loss.

41. The Defendant Officers actions, in conjunction with those of Hassan, violated the following clearly established and well settled federal constitutional rights of Fernando:

    a. Freedom from unreasonable seizure of his person;

    b. Freedom from the use of excessive, unreasonable and unjustified force against his person.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 1983 Against Individual Defendants)

42. The foregoing allegations are incorporated by reference.

43. Plaintiff Fernando Hine Renauld claims damages for the injuries set forth above under 42 U.S.C. § 1983 against the Defendants Officers and Hassan Kiass for violation of his constitutional rights under color of law by, *inter alia*, subjecting Fernando Hine Renauld to an unreasonable seizure of his person in violation of the 4th and 14th Amendments; subjecting him to excessive, unreasonable and unjustified force against his person; unjustified invasion of his privacy; and illegal interrogation.

44. At all relevant times, Defendant Hassan Kiass acted in conjunction or conspiracy with and obtained significant aid from the Defendant Officers in depriving Plaintiff Fernando Hine of his constitutional rights.

## SECOND CLAIM FOR RELIEF

### (False Arrest and Imprisonment Against Individual Defendants)

45. The foregoing allegations are incorporated by reference.

46. The Defendant Officers illegally arrested and imprisoned Fernando Hine Renauld.

47. The Defendant Officers intended to restrict Fernando Hine Renauld's freedom of movement and did directly restrict his freedom of movement for a period of time.

48. At all relevant times, Defendant Hassan Kiass acted in conjunction or conspiracy with the Defendant Officers in subjecting Plaintiff Fernando Hine to false arrest and imprisonment.

49. As a result of this false arrest and imprisonment, Plaintiff Fernando Hine Renauld suffered damages.

50. Plaintiffs timely gave notice of their claims pursuant to C.R.S. § 24-10-109.

## THIRD CLAIM FOR RELIEF

### (ASSAULT AND BATTERY AGAINST INDIVIDUAL DEFENDANTS)

51. The foregoing allegations are incorporated by reference.

52. The Defendant Officers assaulted and battered Fernando Hine Renauld.

53. The Defendant Officers intended to make physical contact with Plaintiff Fernando Hine Renauld, or intended to place him in apprehension of physical contact, and did so.

54. At all relevant times, Defendant Hassan Kiass acted in conjunction or conspiracy with the Defendant Officers.

55. As a result of this assault and battery, Plaintiff Fernando Hine Renauld suffered damages.

56. Plaintiffs timely gave notice of their claims pursuant to C.R.S. § 24-10-109.

## FOURTH CLAIM FOR RELIEF

### (42 U.S.C. § 1983 Against the City and County of Denver)

57. The foregoing allegations are incorporated by reference.

58. Prior to January 14, 2008, the City and County of Denver developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City and County of Denver, which caused the violation of Fernando Hine Renauld's rights.

59. More specifically, based on the manner in which all three Defendant Officers acted, the City and County of Denver had a policy, custom and/or practice of allowing its police officers to assist in collecting disputed private debts in violation of individual's constitutional rights.

60. Alternatively, based on the manner in which all three Defendant Officers acted, policymakers within the Police Department inadequately supervised and trained its police officers, including the Defendant Officers, thereby failing to adequately discourage such constitutional violations on the part of its police officers.

61. The acts of the Defendant Officers, at all times relevant hereto, were in compliance with and pursuant to the actual customs, policies and/or practices and procedures of the City and County of Denver.

62. The above described polices and customs demonstrated a deliberate indifference on the party of policymakers of the City and County of Denver to the constitutional rights of persons within the City, and were the cause of the violations of Plaintiff Fernando Hine's rights alleged herein.

## FIFTH CLAIM FOR RELIEF

### (Extreme and Outrageous Conduct Against Individual Defendants)

63. The foregoing allegations are incorporated by reference.

64. The Defendant Officers and Defendant Hassan Kiass engaged in extreme and outrageous conduct with the intent of causing Fernando Hine Renauld severe emotional distress.

65. At all relevant times, Defendant Hassan Kiass acted in conjunction or conspiracy with the Defendant Officers.

66. As a result of the individual Defendants extreme and outrageous conduct, Plaintiff Fernando Hine Renauld suffered damages.

## SIXTH CLAIM FOR RELIEF

### (C.R.S. § 18-4-405 - Civil Theft Against Individual Defendants)

67. The foregoing allegations are incorporated by reference.

68. Defendant Hassan Kiass entered into a contract with Plaintiffs to provide transportation services as described above.

69. Defendant Hassan Kiass failed to provide the agreed-to services, yet extracted payment from Plaintiffs via wrongful means with the assistance of the Defendant Officers as described above.

70. The individual Defendants knowingly obtained excess payment for transportation services by force or threat.

71. At all relevant times, Defendant Hassan Kiass acted in conjunction or conspiracy with the Defendant Officers.

72. As a result of the individual Defendants conduct, Plaintiffs suffered damages.

## SEVENTH CLAIM FOR RELIEF

### (Civil Conspiracy Against Individual Defendants)

73. The foregoing allegations are incorporated by reference.

74. Defendant Hassan Kiass and the Defendant Officers agreed, by words or conduct, to unlawfully deprive Plaintiffs of their money.

75. These individual Defendants, through the unlawful means described above, wrongfully and unlawfully deprived Plaintiffs of their money.

76. As a result of the individual Defendants conduct, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs pray for relief as follows: (a) judgment jointly and severally against individual Defendants for monetary damages as established at trial; (b) costs of suit; (c) reasonable attorney's fees and costs on Plaintiffs' 42 U.S.C. § 1983 and C.R.S. § 18-4-405 claims; (d) treble damages on Plaintiffs' C.R.S. § 18-4-405 claims; and (e) such other relief as may be deemed appropriate by the Court.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Dated:  January 13, 2010

Respectfully submitted,

*Original Signature on File*

s/ Diego G. Hunt
Diego G. Hunt
A. Bruce Jones
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado  80201-8749
Phone: (303) 295-8232
Fax: (303) 975-5385
bjones@hollandhart.com
dghunt@hollandhart.com

**ATTORNEYS FOR PLAINTIFFS**

**Address of Plaintiffs:**

San Pedro Montes de Oca
del Mas Por Menos,
2 cuadras oeste y 50 metros al sur
San José, Costa Rica

4703137_2.DOC

-13-